## ALEOGRAPH CO. v. ELECTRICAL RESEARCH PRODUCTS, Inc.

## ELECTRICAL RESEARCH PRODUCTS, Inc., v. ALEOGRAPH CO.

### No. 6390.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1932.

Rehearing Denied Feb. 12, 1932.

Frank H. Booth, of San Antonio, Tex., and Richard A. Dowling, of New Orleans, La., for Aleograph Co.

S. J. Brooks and W. L. Matthews, both of San Antonio, Tex., and Henry R. Ashton, of New York City, for Electrical Research Products, Inc.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The Aleograph Company, a Delaware corporation (herein referred to as the plaintiff), the owner since its issue on May 20, 1924, pursuant to application of Allen Stowers and Leo De Hymel, of United States patent No. 1,494,514, entitled "Art of Producing Motion Pictures and Sound Synchronized

Therewith," brought this suit in equity against Electrical Research Products, Inc., a Delaware corporation (herein referred to as the defendant), for the infringement of that patent. The defendant set up the invalidity of the patent sued on, and denied infringement thereof by it. After final hearing on pleadings and proofs, the bill was dismissed for want of infringement. Both parties appealed; the defendant assigning as error the court's failure to hold invalid the claims of the patent in suit which were relied on by the plaintiff.

For the plaintiff it was contended that the talking motion picture reproducing machine of the Western Electric Company (the defendant being a subsidiary of that company) infringed claims 1, 2, 3, 4, 6, 7, 10, 19, and 20 of the patent in suit. Each of those claims is for a combination. For the defendant it was contended that there was absent from the alleged infringing machine an element of each of the combinations covered by those claims. The defendant's machine did not infringe if it did not contain all the elements of the combination described in at least one of those claims. Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100.

Each of the above-mentioned claims calls for three elements which are also found in the defendant's machine, namely: (1) A motion picture machine or projector; (2) a phonograph or sound reproducer; and (3) a mechanical or driving connection between the picture projector and the phonograph, so that the two are operated together as one mechanism. The specifications of the patent sued on show that one of the problems dealt with was that of enabling the projection of a picture to be continued in synchronism with the corresponding or accompanying sound after a breakage of the picture film has occurred; in this connection the specifications stating: "For which purpose the film is indexed with respect to its length in units, and the pictures comprised in each unit of length of the film are sub-indexed, while the mandrel or equivalent part which supports or operates the sound record is provided with corresponding index means which enables the operator easily and quickly to re-establish synchronism between the sound record and the picture film at any point in the length of the film. This indexing system also enables broken picture films to be repaired in such manner that the repaired films, when run through the picture producing machine, will synchronize exactly and throughout their length with the corresponding sound records."

When claims numbered 1, 2, 3, 4, 6, 7, and 10, which are set out in the margin,[1] are

1: The combination with a motion picture machine having means for advancing a picture film having pictures in regular sequence thereon, of a photograph having means for graduating a sound record in predetermined relation with the pictures on such picture film, and a positive driving connection between the film advancing means of the motion picture machine and the record advancing means of the phonograph for causing movement of both said advancing means at a predetermined invariable speed ratio, said driving connection including means for setting the phonograph in any one of a number of predetermined relationships with the motion picture machine to establish synchronism between any selected graduated part of the sound record and the corresponding picture of the film.

2. The combination of a motion picture machine having means for advancing a picture film therewith, a phonograph having a revoluble support for advancing a sound record, and means for positively connecting said film advancing means and said sound record support in any one of a number of predetermined relationships having a definite relation with the number of pictures on the film corresponding to each revolution of the sound record support, said connecting means being operative to produce and maintain a predetermined ratio of speed between the film advancing means and the sound record support.

3. The combination with a motion picture projecting machine having means for advancing a picture film bearing a series of pictures therethrough, of a sound reproducing device having a support for advancing a sound record, and a positive mechanical driving connection capable of establishing a predetermined relationship between the sound record and any one of the series of pictures on the film and operative to cause movement of said film advancing means and said sound record support at a predetermined invariable speed ratio.

4. The combination with a motion picture projecting machine having means for advancing a picture film having pictures arranged successively thereon, and a sound reproducing device having means for advancing a sound record, of a positive mechanical driving connection for causing operation of said film-advancing and record-advancing means at a predetermined invariable speed ratio thereby synchronizing the picture film and sound record, and means associated with said driving connection for establishing a predetermined synchronous relation between any one of the pictures on the film and the record-advancing means.

6. The combination with a motion picture projecting machine having picture film-advancing means, and a sound reproducing device having sound record-advancing means, of a driving connection between said film-advancing and record-advancing means for synchronizing the movements of the picture film and sound record, and a clutch associated with said connection and having means for setting it in a plurality of positions having a predetermined relation to the longitudinal spacing of the pictures on the film.

7. The combination with a motion picture projecting machine having means for advancing a picture film having pictures spaced longitudinally in regular sequence thereon, and a sound reproducing device having means for advancing a sound record, of index means associated with the sound record advancing means and graduated in accordance with the spacing of the pictures on the picture film, and driving means for connecting and synchronizing the operations of the film advancing and sound record advancing means, said driving means embodying a device for setting said driving means in accordance with each of the graduations of said index means

considered in connection with statements contained in the specifications of the patent in suit, it is apparent that each of those claims includes as an element of the combination therein described means designed or appropriate to the accomplishment of the result of maintaining or re-establishing synchronism between the motion picture as projected and the sound intended to accompany the picture in its successive stages—some of those claims including two such elements. The alleged infringing machine contains no feature or device for the accomplishment of such a result. That machine provides no means for re-establishing synchronism if the film breaks while picture production is in progress. This being so, there is no substantial basis for a contention that the defendant's machine contains anything which is the same or an equivalent of means of maintaining or re-establishing synchronism specified in any of the claims now under consideration. There being nothing in the defendant's machine which properly can be regarded as even a substitute for the elements in the claims under consideration which are intended to serve the purpose of maintaining or re-establishing synchronism in the event of the picture film breaking while picture projection is in progress, plainly that machine does not contain all the elements embraced in the combination described in any of the claims now under consideration. We conclude that defendant's machine does not infringe any of those claims, because that machine does not contain all the elements of the combination described in any of those claims.

The following are claims 19 and 20 of the patent in suit:

"19. The combination with a motion picture projecting machine for projecting pictures successively from a motion picture film, of sound reproducing means operative in synchronism with the projecting machine and including means for transmitting sound, and means operative in consequence of breakage of the film while passing through the projecting machine for interrupting the transmission of sound by the sound reproducing means independently of the operation of the projecting machine and the sound reproducing means.

"20. The combination with a motion picture projecting machine, of sound reproducing means operative in synchronism with the projecting machine and embodying electrically energized sound amplifying means, and a film-controlled switch operative in consequence of breakage of the film being projected for de-energizing the sound amplifying means and thus interrupting the reproduction of sound."

Those two claims before the amendment thereof were numbered 21 and 22, respectively. One of the patent drawings shows the preferred device for interrupting the transmission of sound; the operation of that device being described in the specifications. A part of that device as shown and explained remains in contact with the picture film while picture projection is in progress, but a breaking of the film causes a movement of a part of the device which results in breaking the electrical connection between the phonograph and the amplifier or loud speaker, and interrupts the transmission of sound. The originals of the two claims now in question were rejected; a prior patent to Clark, No. 1,388,515, being referred to. Following the rejection of claim 19, that claim was amended by inserting the words, "independently of the operation of the projecting machine and the sound reproducing means." In presenting that amendment, the applicants made the following statement:

"Favorable consideration of claim 21 and reconsideration of claim 22 are requested, as these claims appear to clearly distinguish from Clark cited. According to claim 21, means is provided which is operative in consequence of breakage of the film for interrupting the reproduction of sound independently of the operation of the projecting machine and the sound reproducing means. Clark does not disclose any structure of this character, but on the contrary, provides brakes which require stopping of the phonograph and the projecting machine in order to stop the reproduction of sound. Applicants' device operates instantly to stop the sound, should the film break, without depending upon the more or less gradual stopping of the sound reproducer and the projecting machine, and hence it differs substantially from the arrangement proposed by Clark. Claim 22 appears to distinguish from Clark, as it com-

to synchronize the sound record with any of the pictures on the picture film.

10. The combination of a motion picture projecting machine adapted to feed therethrough and project pictures from a film having pictures spaced longitudinally thereon and provided with an index which indicates predetermined unit lengths of the film and also the individual pictures comprised within each unit length, a sound reproducing device having index means invariably connected thereto to operate in unison therewith during both forward and reverse movements of the sound reproducing device and corresponding to the unit length and individual picture index of the picture film, and means for operating the film and sound record in synchronism.

prehends a film control switch operative in consequence of breakage of the film for de-energizing the sound amplifying means and thus interrupting the reproduction of sound. As previously pointed out, Clark does not interrupt a sound amplifying circuit, nor does Clark interrupt the reproduction of sound by any means other than the stopping of the phonograph and the film projecting machine."

The just set out statement shows that the applicants procured the allowance of amended claim 19 by representing in effect that the stated means for interrupting sound consisted of a breakage of the film causing or bringing about that result; it being expressly stated that the means provided is operative in consequence of breakage of the film. The quoted statement involves the admission that the referred to means of interrupting the transmission of sound is limited to such as operates in consequence of a breakage of the film while passing through the projecting machine, and the further admission that such means is additionally restricted by the amendment having the effect of requiring it to be such as operates independently of the operation of the projecting machine and the sound reproducing means. Those admissions disclose the restricted scope and meaning intended to be given to the language used in describing one of the elements of the combination disclosed by claim 19, and evidences the absence of any intention to cover a means of interrupting the transmission of sound operative otherwise than in consequence of breakage of the film while passing through the projecting machine. The language of the part of claim 19 which refers to means of interrupting the transmission of sound and the interpretation of that language by the patentees themselves, followed by the allowance of that claim, showing that the only contemplated means of producing the stated result was such as is operative in consequence of breakage of the film while passing through the projecting machine, that claim cannot be held to be infringed by a machine in which no such means of accomplishing the stated results is used or provided for.

■ One claiming under the patent is bound by the restrictive or limiting language used by the patentees in describing an element of the patented combination. McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 35 L. Ed. 800; Weber Elec. Co. v. E. H. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Harris v. Ladd (C. C. A.) 34 F.(2d) 761, 763. The defendant's machine contains no feature or device which enables the breakage of the film while passing through the picture projecting part of that machine to have the effect of interrupting the transmission of sound by the sound reproducing means. The breakage of the film while passing through the picture projecting part of that machine is without effect on the operation of the sound reproducing part of it, the last-mentioned part of that machine continuing to operate after such breakage as it did before. The means used for dealing with the continued reproduction of sound by that machine when there is a breakage of the film while picture projection is in progress is a separate and distinct mechanism, called a "fader," which must be operated manually to reduce or suppress the sound. It is apparent that that separate and distinct manually operated mechanism is not within the meaning of the language used in claim 19, which describes an element of the combination therein stated as being or consisting of "means operative in consequence of breakage of the film while passing through the projecting machine for interrupting the transmission of sound by the sound reproducing means." The defendant's machine does not infringe claim 19 because it does not contain or provide for the use of "means operative in consequence of breakage of the film while passing through the projecting machine for interrupting the transmission of sound by the sound reproducing means."

The language used in claim 20 in describing one of the elements of the combination stated is even more restrictive in meaning than the above referred to language of claim 19. Claim 20 states in effect that one of the elements of the combination it describes is "a film controlled switch operative in consequence of breakage of the film being projected for de-energizing the sound amplifying means and thus interrupting the reproduction of sound." The defendant's machine does not infringe claim 20, as that machine contains nothing remotely resembling the film-controlled switch described by the just quoted language, and includes nothing which enables a breakage of the film while picture production is in progress automatically to interrupt or affect the sound from the phonograph or sound reproducing means.

■ As the denial of any relief in favor of the plaintiff was warranted by the failure to prove infringement of any of the claims re-

lied' on, there is no occasion to pass on the question of the validity of any of those claims.

The decree is affirmed.